RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 10a0181p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,
    *Plaintiff-Appellant,*

v.

RICHARD CHRISTMAN,
    *Defendant-Appellee.*

No. 08-4474

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 04-00127-001—Susan J. Dlott, Chief District Judge.

Argued: June 11, 2010

Decided and Filed: June 22, 2010

Before: MARTIN and GRIFFIN, Circuit Judges; DUGGAN, District Judge.[*]

_____

**COUNSEL**

**ARGUED:** Benjamin C. Glassman, ASSISTANT UNITED STATES ATTORNEY, Cincinnati, Ohio, for Appellant. C. Ransom Hudson, LAW OFFICE, Cincinnati, Ohio, for Appellee. **ON BRIEF:** Benjamin C. Glassman, ASSISTANT UNITED STATES ATTORNEY, Cincinnati, Ohio, for Appellant. C. Ransom Hudson, LAW OFFICE, Cincinnati, Ohio, for Appellee.

_____

**OPINION**

_____

  BOYCE F. MARTIN, JR., Circuit Judge. Richard Christman pled guilty to two counts of possessing child pornography in January 2005 pursuant to a plea agreement calling for dismissal of the remaining counts against him, four counts of distribution of

---

[*]The Honorable Patrick J. Duggan, United States District Judge for the Eastern District of Michigan, sitting by designation.

child pornography. The district court sentenced him to 57 months in prison, a within-Guidelines sentence at the bottom of the 57-71 month recommended range. Several months later, the district court admitted that it had relied on impermissible information outside the pre-sentence report in sentencing Christman, and Christman appealed his sentence to this Court. A panel of this Court agreed, and it vacated and remanded the case for re-sentencing.

At re-sentencing, the district court, over the prosecution's objection, sentenced Christman to five days in prison—that is, the time that he had spent in custody when first arrested—and fifteen years of supervised release. The court found that this sentence was warranted because Christman had severe back pain, he was his elderly, ailing mother's primary caregiver, his family believed that he was remorseful, he was a musician and composer, and he had complied with the restrictions of his release on bail. The government appeals, arguing that the district court's imposition of the nominal prison term cannot reasonably be justified by the factors identified at re-sentencing.

For the reasons set forth below, we find that the sentence was substantively unreasonable, **VACATE** the new sentence, and **REMAND** for re-sentencing in light of this opinion. We also direct that this case be assigned to a different judge for re-sentencing.

**I.**

**A.     Underlying Offense**

The facts of the underlying offense are explained in our prior opinion in this case:

On May 13, 2004, an undercover special agent of the Federal Bureau of Investigation in Little Rock, Arkansas, used an internet-connected computer to initiate a "Kazaa" search, a software program that allows peer-to-peer digital file sharing between internet users. The agent initiated the search using keywords associated with child sexual abuse imagery. As a result, the agent was able to download, from another computer identified by a specific internet protocol ("IP") address, child sexual abuse images that showed minors engaging in various sex acts. The images and still pictures included some that involved sadistic and masochistic acts, as well as other acts of sexual violence between minors

and children under the age of 12. The agent also downloaded movies from this other computer, including some showing adult males engaging in various sex acts with children.

The agent was able to determine that the IP address, from which the images and movies were downloaded, belonged to defendant Christman. Other FBI agents, operating independently in Oklahoma, also downloaded child pornography from Christman's computer using Kazaa-enabled searches. After independent investigation by the Cincinnati FBI Field Office confirmed the information that had been forwarded to them from the Little Rock and Oklahoma City FBI offices, agents sought and received a search warrant for defendant's residence.

The warrant was executed on August 5, 2004. FBI agents recovered computer-printed child sexual abuse images, as well as computers and computer media. The seized items contained more than 600 images of child pornography. Agents concluded that defendant was involved in file sharing of child pornography on an international scale; defendant had obtained images from all over the world, including Brazil and England, and had transported these images via computer files to other individuals all over the world. The investigation indicated that defendant did not sell or advertise child pornography, but possessed and transported or shared images internationally strictly for his personal use.

On October 20, 2004, a grand jury for the Southern District of Ohio returned a two-count indictment against defendant, charging him with distribution of child pornography. A six-count superseding indictment filed on November 17, 2004, charged defendant with four counts of transporting child pornography using his computer and two counts of possession of child pornography. A forfeiture allegation was also included in the superseding indictment pursuant to 18 U.S.C. § 2253.

On January 7, 2005, defendant pleaded guilty, pursuant to a plea agreement, to Counts Five and Six, possession of materials constituting child pornography, in violation of 18 U.S.C. §§ 2252(a)(4)(B) and (b)(2), 18 U.S.C. §§ 2252A(a)(4)(B) and (b)(2), and 18 U.S.C. § 2256(8)(A).

*United States v. Christman*, 509 F.3d 299, 301-02 (6th Cir. 2007)

**B.   First Sentencing:**

The circumstances of the first sentencing are also explained in our prior opinion:

A final presentence investigation report ("PSR") was prepared and transmitted to the district court on May 3, 2005. The PSR identified the base level offense as 15 and added four enhancements—2 points because

the material involved a minor under 12 years of age; 2 points because a computer was involved; 4 points because the offense involved material portraying sadistic or masochistic acts; and 5 points because more than 600 images were involved. Three points were subtracted for acceptance of responsibility, resulting in a total offense level of 25. In evaluating defendant's acceptance of responsibility, the PSR noted that defendant "acknowledged possessing child pornography, but stated he does not stalk children and would never harm them." Another portion of the PSR reiterated that defendant "told agents that he was not addicted to child pornography and was different from individuals who molested children." The resultant total offense level of 25, combined with defendant's criminal history category I, indicated an advisory Guidelines sentencing range of 57-71 months.

At the sentencing hearing held on October 28, 2005, defendant and his counsel advanced several arguments in support of mitigation of sentence, including defendant's chronic back pain and depression and the fact that he acted as caretaker for his elderly ill mother. Counsel for defendant pointed out that defendant had no criminal history and that there was no evidence that contact with children had ever occurred or been contemplated by defendant. In this latter regard, defense counsel submitted to the court a Psychological Assessment Report prepared by psychologist Stuart W. Bassman, Ed.D., who, at defense counsel's behest, interviewed defendant to assess his psychological status. In his report, Dr. Bassman noted defendant's contention that "his attraction is at purely a fantasy level and that he would never harm children by acting out sexually against them." Dr. Bassman opined that:

> The patient is seen as having pedophilia. Pedophilia involves a sexual attraction to prepubescent children that may or may not have been acted upon and which attraction or fantasies are distressing to the individual. The patient contends that he has never acted on his attraction and fantasies. Nevertheless, because these fantasies are present and cause him distress, he meets the criteria for a diagnosis of pedophilia.

The district court declined to deviate downward from the recommended Guidelines sentencing range and sentenced defendant to serve concurrent terms of 57 months of incarceration, ordered defendant to pay a $1,000 fine and $200 special assessment, and further imposed three years of supervised release. The district court identified the information upon which it relied in imposing sentence:

> The Court has received the presentence report prepared April 27th, 2005. The Court has also received and

> reviewed the following documents relevant to sentencing: One, the psychological assessment report by Dr. Stuart Bassman; two, the defendant's sentencing memorandum filed October 20th, 2005; and, three, a letter from defense counsel dated October 20th, 2005 enclosing letters from Richard Christman, Mary Christman, Leonard Christman, Jarold Christman, Ron Christman, and Eric Blair.

The court allowed defendant to remain out of prison on bond until January of 2006, at which time he was ordered to voluntarily surrender to authorities.

On January 25, 2006, the district court convened an in-chambers status conference with counsel to discuss the following matter before issuance of the judgment and commitment order:

> What I want to make a record of and bring to your attention is that, in addition to what's in the presentence report and included with that I think is the psychiatric report and everything that was submitted by the parties, *I had discussions that counsel was not privy to between myself, a probation officer and a pretrial services officer. And that influenced my decision.*
>
> *And what they told me was contra to some of the facts in the presentence report. They indicated to me that they believed that Mr. Christman had acted on the pedophilia, had in fact molested children. That was-and I accepted what they said.*
>
> In hindsight, I realize that that's totally inappropriate, and I should have not accepted what they said. And therefore I based my sentence on information that doesn't-that is opposite of what it states in the presentence report, that is totally counter to the presentence report.

(Emphasis added.) The district judge elaborated:

> But I feel awful about this. It was my fault, my fault only, that I listened to hearsay, that there was no-there is no basis in fact for that. *They had-that was just feelings that these two people had. It wasn't based on anything they had observed or seen or done or conversations they had with him. And, in fact, the psychiatric report says to the contrary, and so does the presentence report.*
>
> So I think it's very significant that, you know, when I considered-when I decided that he had acted on his

> pedophilia, I decided to go with the Guidelines. *Had I not taken that into consideration, I would have given him a much lower sentence.*

(Emphasis added.)

The following colloquy then occurred between the Assistant United States Attorney ("AUSA"), who was not present at the original sentencing, and the district court:

> AUSA: And I didn't know if-were these issues brought up at that time [of the original sentencing]? It was something that was determined after the fact?
>
> THE COURT: Before the fact. What happened was I had been contacted, I think, by both Probation and Pretrial about this case. And I coincidentally had a meeting with both of them at the same time. And it was during that meeting that these officers expressed opinions to me that were contrary to what was in the presentence report. And instead of giving the parties an opportunity to address that-or what I should have done was not considered that, because it wasn't part of the presentence report and it was counter to what counsel thought I was using as a basis for my sentencing. I mean, counsel thought I was sentencing on the basis that he had never acted on his pedophilia, when, in fact, I was influenced by hearsay to the contrary.
>
> * * *
>
> I apologize for this. My only explanation was I sentenced 28 people in that week, and I was just trying to get ready for a long surgery and a long period out of the office. And I didn't give this the time and thought that I should have.

After questioning her authority to change the sentence previously imposed,[1] the district judge thereafter entered the judgment of conviction, which reflected the sentence that was announced on October 25, 2005.

---

[1] *See generally*, FED. R. CRIM. P. 35 and 36; *United States v. Strozier*, 940 F.2d 985, 987 (6th Cir. 1991) ("[O]nce the sentence has become a final non-appealable order, the district court may no longer amend or modify a sentence without violating defendant's due process rights. Further, the power of a district court to amend a sentence only extends to a situation where the district judge has misapplied the Sentencing Guidelines, not to situations where he simply changes his mind about the sentence.") (citation omitted).

No. 08-4474        *United States v. Christman*                                              Page 7

*Christman*, 509 F.3d at 302-04. On November 20, 2007, a panel of this Court found that "the district court's reliance upon the undisclosed ex parte information of dubious accuracy at sentencing violates Rule 32(i) and constitutes error that, under these particular circumstances, requires vacation of his sentence and remand for resentencing." *Id.* at 304.

### C.    Second Sentencing

The Probation Office prepared an updated presentence report, which differed from the original in three respects: (1) the report advised that Christman had complied with the terms of his release on bail; (2) Christman had "become annoyed with" his primary physician "and as a result, has not seen him for follow-up medical examinations in more than three months" and had also "stopped seeing his counselor, Eric Blair, because he felt that their conversations and the treatment provided 'had become redundant'" (2008 PSR.); and (3) determined the advisory Guidelines range using the 2007 edition of the Guidelines. The Sentencing Commission had raised the base offense level for child pornography crimes by three levels since Christman's original sentencing. Under the 2007 Guidelines, the suggested imprisonment range for Christman was 78-97 months, as opposed to 57-71 months under the 2004 Guidelines. The updated report recommended sentencing Christman to a 78-month term of imprisonment.

At the re-sentencing hearing in September 2008, the district court sustained Christman's objection to the use of the current Guidelines. The court stated that the "fact that the guidelines are now advisory do not remove the protections of the ex post facto clause." (2008 Sent. Tr. at 16.) Further, the court opined that it would "be fundamentally unfair for Mr. Christman to be sentenced to 57 months in 2005, win his appeal in 2007 in order to have an opportunity to further mitigate his sentence, and then receive a higher sentence in 2008." (*Id.* at 20.) Accordingly, the court determined that the advisory Guidelines range for Christman was 57-71 months in prison.[2]

---

[2] The government has not appealed this ruling.

No. 08-4474    *United States v. Christman*    Page 8

Christman's counsel then renewed his request for a downward variance, based on "medical back issues" (*id.* at 17), Christman's "family responsibilities, including taking care of his mother which is what he was able to do as a result of his bond" (*id.* at 18), "educational, vocational issues" (*id.*), that Christman had not been involved in any criminal activity during his release on bail (*id.*), and that "there was no allegation that he's ever touched children," (*id.* at 19).

The district court stated that it "agree[d] with the defendant's arguments on a departure and/or variance" and determined that a "below guidelines sentence is warranted." (*Id.* at 20.) The court took note of Christman's "medical and back issues." (*Id.* at 28.) As it also noted that Christman had, since being placed on bail pending appeals and re-sentencing, become his mother's primary caregiver and that several family members thought that Christman was remorseful for his crimes, the court found that Guidelines section 5H1.6 (family ties and responsibilities) was applicable to sentencing. Third, the court noted that Christman was a composer and musician and considered that as a mitigating factor under section 5H1.2 (educational and vocational skills). Fourth, because Christman had not violated the terms of his bail, the court stated its belief that he was not a danger to the community. Finally, the court referenced Dr. Bassman's report, noting that "[b]y Mr. Christman's own statements, actual contact with children has never been contemplated" and that "Mr. Christman is amenable to outpatient services." (*Id.* at 31.)

Christman's counsel suggested that the court should consider "a sentence that's not involving prison." (*Id.* at 33.) In contrast, the government argued that "a substantial period of confinement is warranted in this case for a number of reasons." (*Id.* at 38.) The prosecutor emphasized that the child pornography business "has very, very, very damaging effects on children who are abused and others who are given access to that really degrading type of behavior." (*Id.*) He went on to describe the characteristics of Christman's offense and "the policy of Congress in implementing these rather stiff punishments for this type of offense." (*Id.*)

No. 08-4474         *United States v. Christman*                                    Page 9

On September 26, 2008, over the prosecution's objections, the district court then sentenced Christman to five days in prison—that is, the time that he had spent in custody when first arrested—and fifteen years of supervised release, the first eighteen months subject to electronic monitoring.³ (*Id.* at 44.) In announcing the sentence, the court told Christman "that you have been on supervised release now for four years and one month which in some ways has been a term of imprisonment already. The Court does not feel it's fair to subject you to a much longer period than that. . . ." (*Id.* at 47.) The court further stated that "the care of your mother" was "the other thing that really entered into my consideration of this case," stating that "I'm sentencing you, I'm not sentencing your mother, and I feel like I would be imposing a death sentence on your mother if I were to impose imprisonment time on you, and I simply cannot do that." (*Id.* at 47-48.) An amended judgment, correcting typographical errors, was entered on October 21, 2008.

The government timely appealed.

**II.**

Sentencing decisions are reviewed for procedural and substantive unreasonableness. *Gall v. United States*, 552 U.S. 38, 45, 50 (2007). We use an abuse of discretion standard to assess whether a sentence is unreasonable. *Id.* at 45. In applying the abuse of discretion standard, we must keep in mind that "the clear, overriding import of [*Rita v. United States*, 551 U.S. 338 (2007), *Kimbrough v. United States*, 552 U.S. 85 (2007), and *Gall v. United States*, 552 U.S. 38 (2007)] is that appellate courts must respect the role of district courts and stop substituting their judgment for that of those courts on the front line." *United States v. Phinazee*, 515 F.3d 511, 521 (6th Cir. 2008).

---

³While the court also initially imposed a $5,000 fine upon Christman, when it was pointed out that Christman's sole source of income was his Social Security Insurance Benefits, the court removed this portion of the sentence.

### III.

The government argues that the district court's re-sentencing of Christman was unreasonable for three reasons: (1) the district court relied on several inappropriate factors as mitigators; (2) the district court failed to address several section 3553(a) factors relevant to sentencing; and (3) the district court's re-sentencing rationale contradicts what it said during the original sentencing.[4]

A sentence is substantively unreasonable if "the district court selects a sentence arbitrarily, bases the sentence on impermissible factors, fails to consider relevant sentencing factors, or gives an unreasonable amount of weight to any pertinent factor." *United States v. Conatser*, 514 F.3d 508, 520 (6th Cir. 2008). While a sentence within the Guidelines range is presumed reasonable, a sentence outside the Guidelines range is not presumed unreasonable. *United States v. Houston*, 529 F.3d 743, 755 (6th Cir. 2008). In assessing substantive unreasonableness, we look to "the totality of the circumstances, including the extent of any variance from the Guidelines range." *Gall*, 552 U.S. at 51. In doing so, we "must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." *Id.*

While the standard of review does not change based on whether a sentence is inside, just outside, or significantly outside the Guidelines range, the greater the district court's variance, the more compelling the evidence must be. *See id.* at 50 ("We find it uncontroversial that a major departure should be supported by a more significant justification than a minor one."); *United States v. Grossman*, 513 F.3d 592, 596 (6th Cir.

---

[4]This case is similar in sentence and in judge, if not in circumstance, to a case recently decided by another panel of this Court, *United States v. Stall*, 581 F.3d 276 (6th Cir. 2009), in which the lead opinion found that the decision of the same district judge to give a one-day sentence to a defendant for possession of child pornography was substantively reasonable. Judge Rogers dissented, stating that "The one-day sentence in this case does not, with reasonable sufficiency, avoid disparity in sentencing or provide for general deterrence. I would therefore vacate the sentence as substantively unreasonable, and remand." *Id.* at 290 (Rogers, J. dissenting).

This case is distinguishable as in this case, though not in *Stall*, the prosecutor consistently objected to the relevant issues at the sentencing hearing and the district court completely changed the sentence and the reasoning for the sentence, relying almost entirely on discouraged factors, in re-sentencing Christman. Moreover, the facts of *Stall* were far less serious than those here, and the standard of review differed, as *Stall* was evaluated under a plain error standard, and this case must be reviewed under an abuse of discretion standard. Thus, *Stall*'s reasoning and conclusion are not binding here.

2008) (holding that it is not improper to "require some correlation between the extent of a variance and the justification for it").

**A.   Reliance on Inappropriate Factors**

The government first argues that the district court relied on several inappropriate factors as mitigators, as it contends that being a "musician and composer" is not itself a cause for lenience and that providing care to a family member does not warrant the elimination of prison altogether when that care is entirely replaceable.

In *Koon v. United States*, 518 U.S. 81 (1996), the Supreme Court explained that, while section 3553(b) authorizes district courts to depart from the applicable Guidelines range in cases that feature aggravating or mitigating circumstances, district courts are "not left adrift." *Id.* at 94. "The Commission provides considerable guidance as to the factors that are apt or not apt to make a case atypical, by listing certain factors as either encouraged or discouraged bases for departure." *Id.* Discouraged factors are those "not ordinarily relevant to the determination of whether a sentence should be outside the applicable guideline range." *Id.* at 95 (citing U.S.S.G. ch. 5, pt. H, intro. comment).

Under the Guidelines, a "defendant's family ties and responsibilities, [section] 5H1.6, his or her education and vocational skills, section 5H1.2, and his or her military, civic, charitable, or public service record, section 5H1.11," *id.*, are discouraged factors that are "'not ordinarily relevant to the determination of whether a sentence should be outside the applicable guideline range.'" *Id.* (quoting 1995 U.S.S.G. ch. 5, pt. H, intro. comment). Moreover, the Guidelines suggest that only "in exceptional cases" should the court consider such circumstances. U.S.S.G. ch. 5, pt. H, intro. comment; *cf. Koon*, 518 U.S. at 95. Of course, "[a]fter *Booker*, . . . the fact that a factor is discouraged or forbidden under the guidelines does not automatically make it irrelevant when a court is weighing statutory factors apart from the guidelines." *United States v. Husein*, 478 F.3d 318, 326 (6th Cir. 2007) (citing *United States v. Aitoro*, 446 F.3d 246, 255 n.9 (1st Cir. 2006)); *see also United States v. Burton*, 230 F. App'x 505, 509-10 (6th Cir. 2007). Nevertheless, section 3553(a)(5) "requires that the district court consider applicable policy statements issued by the Sentencing Commission, and the Guidelines' disfavored

view towards age and physical condition is, therefore, relevant to our reasonableness review." *Burton*, 230 F. App'x at 510.

> At the 2008 re-sentencing hearing, the district court stated that:
>
> Next, Mr. Christman's educational and vocational skills. He's also a composer and musician. He composes music on a self-contained synthesizer-type instrument that reproduces the sounds of many instruments. At Mr. Christman's original sentencing hearing in October, 2005, he played this music to the Court, and this factor can be considered by the Court under Sentencing Guideline Section 5H1.2 which is educational and vocational skills.

Educational and vocational skills, as described under section 5H1.2, are a discouraged factor, and so should be relied upon only "'in exceptional cases.'" *Koons,* 518 U.S. at 95 (quoting 1995 U.S.S.G. ch. 5, pt. H, intro. comment). While it is not an abuse of discretion for a judge to take note of a defendant's educational background and skill, *see Stall*, 582 F.3d at 288, neither is a defendant's job, in and of itself, relevant to sentencing absent unusual circumstances. Thus, the district court abused its discretion here in finding, without explanation, that the fact that Christman writes and plays music is, in and of itself, a mitigating factor.

The district court also found that the fact that Christman had, while on bail pending his appeal, become the primary caregiver to his elderly mother, was a mitigating factor under section 5H1.6 (family ties and responsibilities). "[F]amily circumstances [are] a 'discouraged' factor under the Guidelines". *Husein*, 478 F.3d at 326 (quoting *Koon*, 518 U.S. at 95). Commentary recently added to section 5H1.6 offers guidance by requiring the presence of the following four "circumstances" before a finding that extraordinariness exists in this case:

> (i) The defendant's service of a sentence within the applicable guideline range will cause a substantial, direct, and specific loss of essential caretaking, or essential financial support, to the defendant's family.
>
> (ii) The loss of caretaking or financial support substantially exceeds the harm ordinarily incident to incarceration for a similarly situated defendant. For example, the fact that the defendant's family might incur some degree of financial hardship or suffer to some extent from the

>absence of a parent through incarceration is not in itself sufficient as a basis for departure because such hardship or suffering is of a sort ordinarily incident to incarceration.
>
>(iii) The loss of caretaking or financial support is one for which no effective remedial or ameliorative programs reasonably are available, making the defendant's caretaking or financial support irreplaceable to the defendant's family.
>
>(iv) The departure effectively will address the loss of caretaking or financial support.

*Id.* at 326-27 (quoting U.S.S.G. § 5H1.6, cmt. 1(B)).

Here, defendant argues that "Christman can be relieved but not replaced." (Appellee's Brief at 17.) However, in and of itself, this is not sufficient. When "there are feasible alternatives of care that are relatively comparable to what the defendant provides, the defendant cannot be irreplaceable." *United States v. Pereira*, 272 F.3d 76, 83 (1st Cir. 2001). There is a feasible alternative available: should his siblings be unable to provide care, a nursing home can provide the around-the-clock care that Christman provides to his mother and that his family believes to be necessary. While this is, of course, a substantial hardship to his mother, it is difficult to see how placement in a nursing home is necessarily a death sentence upon her, as the district court argues. Unlike in *Husein*, it has not been argued that Christman's family cannot afford to place his mother in a nursing home, just that they would prefer not to, so cost is not a relevant consideration here; they argue only that "her quality of life would be greatly diminished." (Appellee's Brief at 17.) As the government notes, many adults provide care for their aged parents or their young children. *See, e.g.*, *United States v. Cantrell*, 173 F.3d 430 (Table), 1999 WL 96656, at *3 (6th Cir. 1999). However, as long as alternate arrangements for care can be made, which in the case of children may include foster care,[5] a situation analogous to placement in a nursing home, this does not argue for mitigation unless extraordinary circumstances exist. To say otherwise would be to invite gross sentencing disparities based solely on whether one has a young child or an

---

[5] *See United States v. Reed*, 264 F.3d 640, 654-54 (6th Cir. 2001) (collecting cases illustrating that this Court and other circuits have "generally not approved of downward departures for family responsibilities based on a parent's obligation to a child.")

infirm dependant. As no extraordinary circumstances appear here, either as argued by Christman's attorney or in the statements of Christman's family at the sentencing hearing, we find that the district court abused its discretion in weighing this factor so heavily in favor of mitigation.

## B.   Failure to Address Relevant Factors

The government also argues that the district court failed to address several section 3553(a) factors that were relevant to sentencing, including deterrence, unwarranted disparity, and the need for the sentence to reflect the seriousness of the offense, promote respect for the law, or provide just punishment. In the alternative, the government argues that, if the court did consider those factors, it failed to explain how the non-custodial sentence furthered them.

Section 3553(a) provides in relevant part that, when imposing sentences, courts shall consider:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense . . . to afford adequate deterrence to criminal conduct [and] to protect the public from further crimes of the defendant. . . .
>
> * * *
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. . . .

18 U.S.C. § 3553(a)(1-2, 6).

While the district court recited the requirements of sentencing pursuant to 18 U.S.C. § 3553(a) and section 3553(2)(A)(1), (2008 Sent. Tr. at 24-26), the court did not later address the issues of deterrence, disparity, or the need for the sentence to be just in any of its sentencing considerations or reasoning. The court did note that this is an "unusual sentence." (*Id.* at 47.) The court's explanation that followed could be read as an explanation of this disparity as based on Christman's time on supervised release and

the impact on his family, specifically his mother. (*Id.* at 47-48.) Additionally, the district court implicitly suggested, in one sentence, that the non-custodial sentence will serve the interest of specific deterrence, as Christman did not violate the nearly identical terms of his release pending appeal. (*Id.* at 30-31 ("[O]ne can conclude that Mr. Christman is not a danger to the community since he has had no violations on home detention with electronic monitoring for over four years. . . .").) However, just because Christman did not violate his release before, with the specter of this re-sentencing hanging over his head, does not necessarily mean that supervised release is sufficient to provide even specific deterrence. Moreover, the transcript makes no reference to general deterrence.

While the court named the relevant factors, mere recitation of the factors is not sufficient to provide for meaningful appellate review. *United States v. Fenderson*, 354 F. App'x 236, 244 (6th Cir. 2009). As the district court merely impliedly addressed the issues of specific deterrence and potential disparity, and did not address general deterrence, or how this sentence could begin to address the harms to the victims,[6] the court did not adequately address these issues.[7] *See United States v. Camiscione*, 591 F.3d 823, 834 (6th Cir. 2010) (stating that "[g]eneral deterrence is crucial in the child pornography context," and holding that a one-day sentence of incarceration for possession of child pornography was substantively unreasonable where the district court "gave [no] indication that it even considered how its admittedly 'lenient' sentence would deter others generally from purchasing and viewing child pornography" and the "sentence, which was devoid of any significant period of incarceration, home confinement, or substantial fine undermines the purpose of general deterrence."). Thus,

---

[6] As explained fully below, in the original sentencing, the court had focused heavily on the harm caused to the victims of the creation of child pornography.

[7] Unlike in *Stall*, here, the prosecutor's statements focused on the issues of deterrence and disparity, so the court had notice and was aware of the importance of these factors. 581 F.3d at 287. This case is also distinguishable from *Stall* because here the district court did not conduct the "extensive analysis of how a ten-year term of supervised release would restrict [the defendant's] freedom and protect the public explains why the district court believed this sentence will deter similar offenders and why this case warranted a variance" which could excuse failure to conduct "a discrete analysis of each [statutory factor]'s application." *Stall*, 581 F.3d at 287.

the sentence was substantively unreasonable for failing to provide enough reasoning of the section 3553(a) factors to provide for meaningful appellate review.

## C.     Contradictory Sentencing Rationales

The government last argues that the district court's re-sentencing rationale contradicts what it said during the original sentencing in two ways. First, it contends that the district court first found Christman's "medical and back issues" to be unremarkable and unworthy of a variance but, in re-sentencing, found them to be extraordinary and a basis for extraordinary lenience, though the facts asserted by Christman were identical. Second, the government argues that, while the court had placed regard for the true victims of child pornography possession—those children who are severely abused to enable its production—at the center of its rationale during the first sentencing, the victims went unmentioned during the court's reasoning at re-sentencing.

First, in Christman's original sentencing in 2005, in which he was sentenced to 57 months in prison, the district court stated that it had "considered the history of the defendant, the defendant's significant mental - medical problems, significantly long-term back pain. The Court finds that this factor is not something that should affect sentencing other than a recommendation to a Bureau of Prisons medical facility." (2005 Sent. Tr. at 11.) At the re-sentencing hearing, however, the district court, without further explanation and without different facts or circumstances having been presented by Christman, found that Christman's "medical and back issues" "can be considered when it is presented to an unusual degree, as in this case, under Sentencing Guidelines Section 5H1.4 which is physical condition." (2008 Sent. Tr. at 29.) Additionally, according to the 2005 pre-sentence report, Christman "is not severely infirm and confined to his home, except by choice" (2005 PSR ¶ 117; 2008 PSR ¶ 124), and he committed all the crimes of conviction from inside his house. Without further explanation to show how the district court so drastically changed its understanding of Christman's back pain, it is impossible to know why this determination was reversed on re-sentencing. While there does not appear to be a clear constitutional or statutory requirement that a court view a defendant consistently, when the court makes such a strong statement as to find

that medical and back issues are present in an unusual degree but had previously found the identical issues in the same defendant to be insignificant, a failure to give any explanation is unreasonable.

Second, in Christman's original sentencing, the district court articulated the following sentencing rationale:

> For every bit of child pornography, there is some child who was hurt, tortured, killed, whatever. A lot of these videos that there are child pornography come from places like Brazil where children are kidnapped off the street, raped, killed right on film with the sound and the pictures for people to watch. There's only one way to stop that distribution. We can't stop it at the end where it's made, but we can stop it at the end where it's consumed. And if there aren't any consumers for it, there won't be anyone making it hopefully. And I think that was Congress' intent when it passed these laws, and it's the Court's duty to enforce it.

(2005 Sent. Tr. at 26.). However, the second sentencing transcript contains no mention of the children who are the true victims of child pornography, and the district court did not explain this change in the reasoning for its sentence, although the prosecution forcefully explained the importance of this factor at the sentencing hearing, stating that "he's an end user of that child pornography, a business that has very, very, very damaging effects on children who are abused and others who are given access to that really degrading type of behavior." (2008 Sent. Tr. at 38.) As previously noted, there is no requirement that a district court be consistent upon re-sentencing; indeed, re-sentencing is required to correct a problem with the original sentencing. However, as before, this is a drastic change in sentencing rationale; the district court on re-sentencing seems concerned only with how the sentence will affect Christman and his mother. While this is important, they are not the victims of the crime and it is not for their benefit alone that the sentence must be imposed. The complete lack of explanation for this change is, given the unique circumstances of this case, unreasonable.

## IV.

We therefore **VACATE** the sentence and **REMAND** for re-sentencing in light of this opinion. While we make no recommendation as to the duration of the new sentence, we also direct that this case be assigned to a different judge for re-sentencing. *See generally Bercheny v. Johnson*, 633 F.2d 473, 476-77 (6th Cir. 1980) (citing with approval, *United States v. Robin*, 533 F.2d 8, 10 (2d Cir. 1977), articulating the factors to be considered in determining whether to remand to a different judge).

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

No. 08-4474

**FILED**
**Jun 22, 2010**
LEONARD GREEN, Clerk

UNITED STATES OF AMERICA,
    Plaintiff - Appellant,

v.

RICHARD CHRISTMAN,
    Defendant - Appellee.

Before:  MARTIN and GRIFFIN, Circuit Judges; DUGGAN, District Judge.

# JUDGMENT

On Appeal from the United States District Court for the Southern District of Ohio at Cincinnati.

THIS CAUSE was heard on the record from the district court and was argued by counsel.

IN CONSIDERATION WHEREOF, it is ORDERED that the sentence imposed on defendant Richard Christman is VACATED and the case is REMANDED for re-sentencing in light of the opinion of this court.  IT IS FURTHER ORDERED that the case be assigned to a different judge for re-sentencing.

**ENTERED BY ORDER OF THE COURT**

Leonard Green, Clerk

**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| Leonard Green<br>Clerk | 100 EAST FIFTH STREET, ROOM 540<br>POTTER STEWART U.S. COURTHOUSE<br>CINCINNATI, OHIO 45202-3988 | Tel. (513) 564-7000<br>www.ca6.uscourts.gov |

Filed: June 22, 2010

Mr. Benjamin C. Glassman
U.S. Attorney's Office
221 E. Fourth Street
Suite 400 Atrium II Building
Cincinnati, OH 45202

Mr. C. Ransom Hudson
Law Office
639 Main Street
Cincinnati, OH 45202

        Re: Case No. 08-4474, *USA v. Richard Christman*
            Originating Case No. 04-00127-001

Dear Counsel,

   The court today announced its decision in the above-styled case.

   Enclosed is a copy of the court's opinion together with the judgment which has been entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

                                  Yours very truly,

                                  Leonard Green, Clerk


                                  Linda K. Martin
                                  Deputy Clerk


Enclosures

Mandate to issue.